## Case No. 9,604.

### MILLIGAN v. DICKSON et al.

[2 Wash. C. C. 258; Pet. C. C. 433, note.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1808.

EJECTMENT—PUBLIC LAND—PLAINTIFF'S TITLE—PAYMENT OF PURCHASE MONEY—RIGHT OF ENTRY.

The plaintiff claimed under a warrant and survey in 1769; but produced no proof of the payment of the purchase money to the proprietors or to the state. Such a title is not sufficient to recover in ejectment, as it does not give a right of entry.

The title of the plaintiff [the lessee of Milligan] was as follows: On the 1st of April, 1769, a special application, (No. 39,) for three hundred acres, was made for John Campbell, at Ligonier, near the fort on the Conemaugh, and a small creek running into the same, joining Samuel Duncan, called "M'Gee's Hunting Cabin." On the 5th of June a survey was returned, in pursuance of order No. 39, dated the 24th of May, 1769, for John Campbell, situated near the fort on the Conemaugh, and on a small creek called "M'Gee's Run," at his hunting cabin. The surveyor states, that "at the time of making the survey, T. Armstrong made pretensions to the land, under an order No. 64, but the special order, on which I returned the survey, was not then come to hand." Campbell died; and his widow and administratrix, by order of the orphan's court, legally sold the above land to James Christie, in 1773, which she regularly conveyed to him. In 1796, Robert Milligan was appointed attorney in fact by Christie, to sell this land, and in the year 1800, he sold and conveyed it to the lessor of the plaintiff. It appeared in evidence, that when Christie purchased the land, in 1773, he placed upon it a servant man and his wife, indentured for five years, in order to retain the possession, and take care of the land. The servant man died before the expiration of the five years, and his widow married one Hadabaugh who continued to live on the land, without paying rent, till about six years ago, when he left it, and the defendants [Dickson and others] took possession. In 1796, Hadabaugh came to the

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

attorney of Christie, in order to buy this land, and offered as much for it as it was afterwards sold for, but it was not then accepted. The defendants claimed under a lottery order, dated April 3d, 1769, No. 64, for three hundred acres, on the forks of the Conemaugh and M'Gee's run, to include a spring. The defendants proved a settlement, near twelve months prior to April, 1769; in March of that year, Campbell disseized him, and made improvements, and continued to hold it, before and after his survey. It was proved that the land in question is fifteen miles from Ligonier, and that there was no fort at all on the Conemaugh in 1769, nor does the land join Samuel Duncan; in all other respects, the survey fits the order of April 1st, 1769. It was also proved, that no such order as the one recited in the survey of May 24th, 1769, was to be found on the books of the land office, or amongst the papers. That of the 1st of April, was found duly recorded. It did not appear, that either of the parties had paid any thing to the state for this land. The power of attorney from Christie to Milligan, or rather an exemplificatilon of it, was certified by the lord provost and chief magistrate of Edinburgh, to have been acknowledged by Christie before him, and was certified under the city seal.

This was objected to, by Dallas for defendant, because it is only an exemplification, and there is no proof that the original is lost; and it is certified, as having been merely acknowledged, whereas the act of assembly, passed in 1705, declares, that "letters of attorney, the execution whereof shall have been proved by two of the witnesses thereto, before any mayor or chief magistrate of any city, &c. where the same was made, and certified under the public seal of such city, &c., shall be good; and all deeds for lands. made by virtue of powers so proved and certified, shall be effectual." This power is not proved, but is acknowledged, and therefore it is not authenticated under the law.

Tilghman, for plaintiff, admitted that the words of the law were against him, but contended, that the uniform practice in this state had been otherwise, and that powers, proved and certified as this is, have without objection been regularly admitted.

PETERS, District Judge, was for admitting the evidence upon the principle that communis error facit jus.

WASHINGTON, Circuit Justice, contra. The law is plain. I know nothing of a contrary practice. The court being divided, the evidence was admitted.

Dallas offered a paper, signed Richard Wallace. proved to be in the handwriting (except the signature) of Kennedy, secretary of the land office, purporting to be the application of John Campbell of April 1st 1769, but differing from it. The original is lost, and Kennedy is dead.

THE COURT thought it improper to admit the evidence, against a certified copy of the application, from the records of the land office.

The objections to the plaintiff's recovery were—First; that the survey is not a location of the application of April 1st, 1769, as it refers to an application differing in date—is not at Ligonier, nor near to any fort—and does not adjoin Samuel Duncan. Second; the lessor of the plaintiff, having only a survey, without payment of the consideration to the proprietors or to the state, has not obtained a legal title to authorize a recovery in ejectment. Third; the plaintiff has not a right of entry by possession, because it does not appear that those who held the possession, held under Christie; nor did they pay rent; which were necessary, in order to make their possession the possession of Christie. Run. Eject. 15, 58, 60, 292, 289; 2 Bac. Abr. 423; 2 Strange, 1128; 1 Wils. 176.

The plaintiff insisted upon an uninterrupted possession from 1769, till about six years ago, when the defendants gained it; but if otherwise, the plaintiff may recover, upon priority of possession, against a disseizor. Cro. Eliz. 438, V.

The other points were also controverted.

WASHINGTON, Circuit Justice (charging jury). Whether the survey for Campbell does or does not fit the application, is a question of some difficulty, but you may discharge your minds from this subject, since the plaintiff places his chief reliance upon his possessory title; and if that will not support him, he cannot recover in the present action upon his paper title, for that does not give him a legal title. The question, then, for your consideration, is, whether the plaintiff has shown a right of entry? From 1769 to 1778, it is clear, that the premises were in the possession of Campbell, under whom the lessor claims; or of Christie, by his servants. It does not appear that Hadabaugh paid rent to Christie; nor, from any positive declarations from him, whether he held under or adversely to Christie. Whether you will consider his offer, in 1796, to purchase the land, and his subsequent abandonment of it, as evidence of the former, or not, is the question. If you are of opinion that he held under Christie, then it is unimportant whether he paid rent. or not; and in that case, you should find for the plaintiff. If you think that he held in opposition to the title of Christie, then your verdict should be for the defendants, since an order and survey, without payment of the consideration, does not give a legal right of entry.

Verdict for defendants.

[NOTE. The case was removed to the supreme court upon a division of opinion of the judges as to the admissibility of the power of attorney from Christie to Milligan, but the case was sent back under an agreement of the parties that this single question should be decided. Evidence was introduced as to the practice in the state. There was a verdict for the plaintiffs. Case No. 9,603.]